Thank you, Your Honor. Actually, may it please the court, I'm Richard Order and I represent the Plaintiff Appellant Intelliclear, LLC. I'm actually having trouble seeing everybody on the screen. They're all, I don't know if I have the right screen. I don't have and I can't see the, clerk, the court clock. But in any event, I would like to reserve three minutes for rebuttal. And so, okay, so this court should reverse the entry of summary judgment because Intelliclear amply demonstrated the existence of genuine disputes as to material facts regarding the identification of its trade secrets, the reasonable steps taken to maintain their secrecy, and misappropriation of its trade secrets by ETC Global. There are several grounds for reversal. The primary ones are first, the district court failed to find, to make an express finding of the non-existence of any genuine disputes as to any material facts. It failed, the court failed to do that in its reasoning and its analysis in the order, but also in the judgment itself, which is on page two of the ER. The judgment was a proposed judgment that was submitted by ETC Global in connection with this motion. The court black lined out the word proposed and also black lined out the language that ETC provided that says that there was no genuine disputes as to any material facts and that ETC was entitled to judgment as a law. I think that's very telling because again, the judge did not follow the standard of rule 56A. The second primary point is that our client, Martin Barretto's declaration identified Intelliclear's trade secrets and his identification of the trade secrets was obviously sufficient enough for ETC Global to find them in the ICBC trade specification. Let me back up and explain that. ETC was a client of Intelliclear's and Intelliclear's through a license agreement shared its technology with ETC. Another customer, another client, the Industrial and Commercial Bank of China, commonly referred to as ICBC, was also a customer of Intelliclear's and was also subject to a license agreement and ICBC... Is it in the record that ICBC was subject to a confidentiality agreement? Yes, Your Honor. Not specifically by name, but in Martin Barretto's declaration, paragraphs 22 and 25 of his declaration, he states that all customers, all clients of Intelliclear's were subject to the same license agreement with the same confidentiality provision. This was all presented in the reply brief by ETC. ETC made its motion, had some vague claim that there was no trade secret. We came back and opposed that with Mr. Barretto's declaration, which identified many, many specific details and points of our trade secrets. Then in the reply, ETC came back and said, well, those points aren't secret because here they are. We found them in the ICBC specification. And they implied that these terms and these features were widely known in the public and they're not disseminated in the public. They were subject to a confidentiality agreement that protected those features. So now the claim is no longer that we haven't sufficiently identified the trade secret, but that it's somehow public. But that's just raising a dispute as to the material fact as whether we preserve the secrecy. Can I go back to ICBC? Can you point me to the specific language I'm looking at? That's actually an issue that is important to me because I think I understand the argument to be that the end users were not necessarily under a confidentiality agreement. I'd like to see what language you're relying on in the Barretto declaration. It's easier to work off of the version of his that's filed under seal in volume three. And it's on page 227, paragraph 22. He says, quote, furthermore, IntelliClear has taken reasonable measures to protect and keep secret that information, such as encryption and or compilation of the source code and requiring licensees to agree to confidentiality. So does it say that ICBC was a licensee? No, but that's because that had not been raised as an issue yet. Then you go on into paragraph 25 on the next page, 228, and it quotes the entire section or paragraph concerning confidentiality and IntelliClear's intellectual property. And the final sentence then says, similar language appears in all agreements licensing the IntelliClear system. Now, if you then looked at the ETC's brief, they're the ones that say that ICBC was a client of IntelliClear's. On page 21 of their appellate brief says, ETC is a clearing client of the Industrial and Commercial Bank of China, ICBC, which uses the IntelliClear system. IntelliClear only licensed the system and they use the same license agreement for its customers. So is there something that tells me or is it just a matter of the industry knowledge that every client is a licensee? I'm just trying to get those ends to connect up. Right. So you take Martin Goretto's declaration where he says, we license this IntelliClear system to our customers and we have them sign the license agreement and the license agreement has a confidentiality provision in it. Then you see that ETC says, well, we too work with ICBC and in that work, ICBC wanted to make sure that we would provide information that would comport with the IntelliClear system. So they knew that ICBC was using the IntelliClear system and then they were able to use the IntelliClear system because they also had a license agreement. So I believe it's covered. And you know, our job here is not necessarily to prove that, but to show that there's at least a dispute as to whether we adequately preserve the secrecy and confidentiality of our trade secret. And I believe that that does so. You know, one of the points that the court, does that answer your question, Your Honor? Yes, it does. Thank you. Okay. One of the points that the district court made was that we had not filed an exhaustive list of all the features of our trade secrets. Again, this was at the very beginning of the case. There was, first, there's no requirement under Rule 56 that we provide every single aspect of the trade secret. I mean, that's really more in the realm of discovery under the California discovery statute involving trade secrets. But in any event, all we had to do is show that we had one trade secret that we had adequately identified and that we had taken reasonable steps to maintain secrecy and that had been misappropriated. And the judge, in fact, did find that we had identified some trade secrets. And as far as secrecy is concerned, you know, we have in the affidavits of our expert, Samuel Goldstein, and in Mr. Baretto's system. And so encryption and confidentiality have been, confidential agreements have been considered adequate and reasonable steps to preserve secrecy of trade secrets. And as far as misappropriation is concerned, we had overwhelming evidence of misappropriation. We had a declaration from Kevin Murphy, the former CEO and president of Electronic Transaction Clearing, a subsidiary of ETC Global, who said that it was common knowledge when he was there that the company was trying to copy the IntelliClear system and to create and build their own system. And our forensic expert who went in and compared the two systems said that there was overwhelming support or evidence of virtual duplication and copying, even to features that even said IntelliClear in their name. So on top of it, Martin Baretto stated that during the transition period at the end of the license agreement where the two companies had to cooperate and make sure that data was offloaded properly to ETC, he noticed a lot of features in their new system that were the same as the ones in the IntelliClear system. So I'm, I think I'm almost up, my time's almost up. Is there any other? You've got four minutes on the clock right now. Right, so I, if there are no further questions, I basically, I just think that the judge jumped to judgment too quickly at the beginning of this case and that we certainly identified enough issues, genuine disputes, as a material fact to let this go to a jury. All the rest is sort of just discovery as to what our trade secrets are. As an alternative, you would ask for a stay, am I right, to conduct additional discovery? A stay? You mean a deferral of the ruling? I'm sorry, wrong word, deferral. Yeah, well, yes, but at this point he's already ruled, so I don't know if a deferral makes any sense. I think we have to go back. Yeah. But I see your point, Ron, and in effect, yes, that they could make a second summary judgment motion at the end of discovery. Okay. Thank you. Okay. Thank you, Mr. Orner. Thank you. Mr. Fee. Can you please report? My name is Kevin Fee and I represent ETC Global Holdings, Inc. Even if no discovery has taken place yet, a plaintiff facing summary judgment must come either with evidence sufficient to identify a material issue of fact or an affidavit specifically identifying discovery necessary to do so. As this court's president makes clear, to successfully oppose summary judgment, a trade secret plaintiff must sufficiently identify its alleged trade secrets and prove that they exist. The district court properly held that IntelliClear failed to meet this very basic burden. IntelliClear now complains it was forced to defend against this summary judgment without having the benefit of discovery from ETC. But as the district court noted, no amount of discovery from ETC would help IntelliClear identify its own trade secrets. IntelliClear also suggests it was blindsided by a requirement to produce evidence of its trade secrets on 13 days notice. Is there another case? IntelliClear points to cases which were ultimately dismissed for failure to be specific enough about trade secrets, but that was always after extensive discovery and many efforts to define the trade secrets in sufficient detail. Are there any cases where the district court dismissed essentially before any discovery took place? Your Honor, I don't think the parties have cited any cases along those lines, but there's really no prohibition. The reason why we do so, as you know, federal rules, civil procedure specifically provides that a summary judgment motion can be filed at any time up to 30 days after the close of all discovery. As a result, even a rule itself is clear on its face that a party facing a baseless trade secret claim is not required to endure discovery before filing its motion for summary judgment. The district court didn't say it was faceless. The ruling seemed to say that Beretto identified some features that were trade secrets, but it only identified some and didn't identify all of them, which seems to raise the inference that the district court thought that IntelliClear had identified at least one trade secret. Is that a wrong interpretation or inference? Yeah, I think it is, Your Honor. The district court just simply reiterated that IntelliClear purported to identify trade secrets in the Beretto Declaration in paragraphs 12 through 20 specifically. The language that my colleague likes to point to, which she claims is unclear on this point, I think should be read in context with other part of the court's decision. In footnote two, the court again says that the Beretto Declaration, quote, describes the features of the IntelliClear system that plaintiff considers trade secrets in greater detail. But the court was just acknowledging that IntelliClear had attempted to identify what it believed to be trade secrets, but there certainly is no finding by the district court, nor could there have been a finding by the district court, that IntelliClear actually identified any protectable trade secret. So the language where it says, by only identifying some of its trade secrets, plaintiff believes to open the possibility that it might later argue that other unnamed elements of the IntelliClear system are trade secrets as well. I'm questioning whether that suggests that the district court ruled on the basis of the identification being incomplete of all trade secrets, rather than the identification of any particular trade secret being incomplete. So maybe you could help me understand that a little better. Sure. So, Your Honor, IntelliClear as a trade secret plaintiff sort of had two obligations with respect to identifying its trade secrets. First, it had to specifically and particularly identify what the information was that they believed to be secret. And then secondly, they have to identify or provide a basis for believing that they're actually protectable as trade secrets. You know, part of, I think, the confusion here is that the plaintiff did such a poor job of identifying its trade secrets that it was difficult for the court to sort of muddle through the entire record here. But, you know, initially, you also bear in mind that their initial trade secret disclosure just made some very sweeping claims that they own unique but unidentified logic and tables. It wasn't until we filed our motion for summary judgment that they finally came forward with a little bit of more specificity and started identifying specific tables and things of that nature. And, you know, the reason why they were so hesitant or reluctant to identify anything with specificity is because as soon as they did, we were able to quickly, in just 10 days, identify evidence that all that information was publicly available. So there's sort of two prongs here. The court requires, and the Ninth Circuit's precedent requires, the plaintiff to separate out all of the trade secret information, especially in the software cases, as opposed to just saying, we own trade secrets in our software generally. Intellithere certainly failed to do that in its initial disclosures. In its supplemental disclosure, one might argue that they tried to identify a few tables that but the evidence is unrebutted, Your Honor, that that information is publicly available to any end user of the Intellithere system that is on the ICBC issue because Mr. Veretto in his declaration does say this is not found elsewhere on Wall Street, something using alphanumeric account numbers. And it seems like your client relied heavily on what was provided by ICBC and so that was why I was pursuing that line of questioning with the opposing counsel. It's like, well, how do we know that ICBC was also under a confidentiality agreement? Can you help me on that? Sure, Your Honor. I think there's a couple points to make with respect to that. First of all, the question isn't just whether or not ICBC was subject to a confidentiality agreement, but it also matters whether or not ICBC's end users are subject to a confidentiality agreement. The way that we identified these screenshots from the ICBC Intellithere interface was that ETC had access to that system after determination of the license agreement. So there was no license agreement in place between Intellithere and ETC at the time that we were printing out these screenshots showing that all their supposed trade secrets are available to ETC and other customers of ICBC. Secondly, even if the agreement between Intellithere and ETC somehow governed after determination of the license agreement, I think it makes sense for you, Your Honor, to take a look closely at the language of the license agreement confidentiality provision, which is in Mr. Barreto's declaration at paragraph 25. The first line of the part cited in paragraph 25 says that we're talking about all information of any kind IC, Intellithere, has provided to ETC in connection with the license. The information that we provided to Your Honor and to the court below was not provided by ETC to Intellithere, and it was not in connection with the license. So this confidentiality provision has no applicability whatsoever to the information that we made available and that we received pursuant to our relationship. Finally, Your Honor, the evidence is also clear from Barnaby Hatcher's supplemental declaration. Let me just find the second part, Your Honor. Okay, Your Honor, reading from page ER-205, paragraph 6, Mr. Hatchman testified that all of the features Mr. Barreto identifies as Intellithere trade secrets are available to end-users of the Intellithere system that have no confidentiality obligations to Intellithere, including through the specification documents such as the ICBC Intellithere and through the Intellithere client interface. As a result, the evidence is not only that ETC had access to this information, but ICBC customers also had similar access to this information. And there is no evidence in the record whatsoever that any end-user of ICBC is subject to a confidentiality agreement with Intellithere. If Intellithere had evidence that it had confidentiality agreements with these customers of ICBC, it should have come forward and shown that. It is the plaintiff in this case. It bears the burden of showing these are subject to secrecy requirements, and they're plainly not secret based on the record below. Intellithere did not even attempt to rebut any of that evidence at the district court level, and it's undisputed, therefore, not on appeal. Does that answer all your questions about confidentiality agreement, Your Honor? Uh, yes, it does. Thank you. Is Judge Gould, if I could interject a technical question. I don't know if, uh, Mary's listening in, but on my speaker here, I'm getting some sort of echo after Mr. Fee's. I'm hearing something as well, Judge Gould. You're not the only one. I don't, it sounds like another, uh, argument in another courtroom, actually. I'm wondering if the attorneys could mute their, uh, their systems when they're not arguing. I'm not sure where that's coming from. Okay. That would be a good idea. Go ahead, Mr. Fee. Thank you, Your Honor. So, turning quickly, then, to the remaining issues, uh, that were raised on appeal, uh, Intellithere also argues that the district court abused its discretion by denying its Rule 56d request for discovery while, uh, prepared an answer for the motion for summary judgment. But there was no abuse of discretion by the district court in that regard. This court has repeatedly held that a party seeking discovery pursuant to Rule 56b must not several things. First, it must set forth in affidavit form the specific facts that it hopes to elicit from the additional discovery. And second, it must show that the sought-after facts are essential to oppose summary judgment. The declaration of Mr. Order that was submitted in connection with the Rule 56d request fails on both fronts. Mr. Order's words, uh, were Intellithere, quote, would ideally have preferred to have taken discovery, but that's not the same as showing that it was essential to oppose the motion. In fact, Mr. Order didn't identify a single specific fact that Intellithere hoped to elicit through the discovery that it requested, let alone how such discovery information would be essential to opposing ETC's motion. But that failure is hardly surprising, given that it's axiomatic that, in the district court's own words, quote, no amount of discovery propounded on defendant will uncover which elements of plaintiff's Intellithere system it believes are trade secrets and which are generally known. In light of that fact, the district court did not abuse its discretion in denying the Rule 56d motion. Wouldn't that be true, though, in all of these cases? I mean, when I read the other cases dealing with the same sort of issues, the district court allowed extensive discovery, and the plaintiff in those cases used that time to refine and sharpen their claims of the trade secrets. I can't say I totally understand why that is the case, because what you're saying makes sense to me. How come you don't know your own trade secrets? However, that does not seem to be the approach we've taken in all these other cases. Your Honor, first of all, I agree with your sentiment that it seems to make sense that if you're going to bring a trade secret misappropriation claim, you should know what your trade secrets are. That seems like a pretty basic proposition that shouldn't be in dispute. I don't think any of the cases that we've seen have denied a motion for summary judgment so that a defendant can or so that a plaintiff can take discovery of the defendant before it identifies what trade secrets it's asserting. Some of the cases that have been cited to the court have gone through a back and forth of discovery, but it was never on the basis that the plaintiff needed to learn from the defendant what the plaintiff's own trade secrets are. I think it goes without saying that the defendants don't know what the plaintiff's trade secrets are. That's why we're here today, Your Honor. I think this case is more than two years old now. I still don't think that there's a single piece of information that IntelliClear has identified that is in paragraphs 10 through 22 of Mr. Bretto's declaration that we haven't demonstrated by unrebutted evidence to be publicly available to ETC and other customers of ICBC. It shouldn't take two years for a trade secret plaintiff to figure out why it brought this lawsuit in the first place, and that's exactly what the issue is here. The truth of the matter is, IntelliClear has intentionally gone out of its way not to be specific until the very last minute about any potential trade secrets because it didn't want to subject its trade secret claim to scrutiny. If you don't have to take my word for it, throughout the entire briefing, IntelliClear made it clear that they were withholding information about their trade secrets. For example, at just page 8 of its reply brief, IntelliClear stated, it expected it would disclose more details about its trade secrets over the course of discovery. Well, I don't know why they're holding on to the identity of their trade secrets until discovery proceeds, but once there's a properly filed motion for summary judgment pending, the time to withhold any details with respect to their trade secret claims had long passed. Your Honor, I see I'm about out of time now, so unless the court has any additional questions, that's all I have. Okay, thank you. No questions here. Are there questions from Judge Ezra or Judge Agnew? No, sir, I don't have any questions. Thank you. Okay, no questions, so Mr. Order will permit rebuttal. You need to unmute yourself, Mr. Order. I'm still not hearing you. Can you hear me now? Yes. Okay, thank you. Sorry about that technical glitch. My colleague keeps saying that he has presented unrebutted evidence, but his unrebutted evidence appeared in his reply brief. We did not have the right to rebut any further, and he introduced it in the reply brief, and it is rebutted because we pointed out that Mr. Barretto had already stated that all IntelliClear clients were subject to the confidentiality agreement. So at most, what he's showing is that there is a genuine dispute as to a material fact as to whether IntelliClear adequately took steps to Mr. Order, he suggests that opposing counsel suggests that when you had the opportunity to lay out the various trade secrets, you basically put them in your back pocket and said, well, we'll talk about them later during discovery. Is that correct? No, that's not correct, Your Honor. What he was referring to is that he was referring to the complaint, and naturally in the complaint, which was not filed under Steele, we wanted to be general, and we didn't have to be any more specific under the rules completing under either Rule 8 or Rule 9 of the Federal Rules of Civil Procedure. So yes, we were general in that, and there was nothing wrong with that, and we were very specific in Barretto's declaration. You know, if you read those paragraphs, 10 through 22, they're very detailed, and in fact, we were so detailed and specific that EDC had no problem. My colleague boasts that they were able to find in 10 days everything we were talking about. So it was adequate identification, and their only problem is that they found that information in a source that was still protected. So as a result, again, this court does not have to decide who's right and who's wrong. This court just has to decide whether it's a material issue or there's a genuine dispute as to material facts. And so certainly, there's no dispute right now, actually, that they seem to have conceded that we've identified the trade secret with sufficient particularity because they were able to then find the details further somewhere else, and that somewhere else is protected, so that secrecy is protected. And again, we showed enough evidence to show that there's been misappropriation of those trade secrets. So in conclusion, I think that the district court erred, that this court's looking at this de novo. Oh, as far as Rule 56E1, I just wanted to point out, we did, I mean, this reply brief and the judge's own concerns cried out for the judge to exercise discretion and ask us to address these issues further, either by deferring his ruling to the end of discovery or just seeking us, seeking clarification from us. That, again, was another error that he committed. But the main problem here is that on de novo review, there certainly are genuine issues of material fact requiring this to be sent back to the court, district court, for discovery and a trial before a jury. Thank you. Okay, thank you, Mr. Orr. Unless either of my colleagues have questions for the advocates, I'm just going to thank Mr. Orr and Mr. Fee for their excellent arguments. It's a very, thank you, Your Honor. Very complicated case, and the panel will review it in more depth and issue an opinion in due course. So until a clear number 19-55862 shall be submitted at this time. And again, I want to thank Mr. Orr and Mr. Fee for their excellent arguments.
judges: Gould, Ikuta, Ezra